### IN RE ESTATE OF LAYTON.
### JAMES C. EICH, APPELLANT, V.
### ESTATE OF LAYTON, APPELLEE.

300 N.W.2d 802

Filed January 9, 1981.   No. 43102.

James B. Cavanagh of Erickson, Sederstrom, Leigh, Johnson, Koukol & Fortune, P.C., for appellant.

Steven W. Floersch and Collins & Gleason for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

BRODKEY, J.

James C. Eich, plaintiff and appellant herein, appeals from an order entered by the District Court for Sarpy County on October 30, 1979, dismissing his claim previously filed against the estate of Harry H. Layton in the county court of Sarpy County, which claim was allowed by that court and from which order the personal representatives subsequently appealed to the District Court. We reverse and remand.

It appears from the record that Harry H. Layton, a resident of Sarpy County, died intestate on August 5, 1978. He was predeceased by his wife and left no surviving issue. Two of his cousins, Lester J. Lutz and Ward Thompson, were appointed personal representatives in intestacy by the Sarpy County court on August 10, 1978. The inventory in that estate reveals that it was valued at $621,208.64 at the date of decedent's death, and consisted of a residence in Sarpy County; a hardware store and business proper-

ties located in Omaha, Nebraska; and also various stocks, bonds, and bank accounts.

On October 16, 1978, the plaintiff, who had been an employee of the decedent for over 40 years, filed a statement of claim in the estate, alleging that during his employment in decedent's hardware store the decedent on numerous occasions had advised him that because of his long and faithful service, he, the decedent, would execute a will in which he would provide that the inventory, goodwill, equipment, and business building in which the Layton Hardware Store is located would be left in its entirety to the claimant; and despite such promises, the decedent failed to execute such will and made no other provisions for leaving the hardware business and building to the claimant. Eich further alleged that the value of the property promised to him by the decedent was $54,000; and that the claim was due, was an unliquidated claim, and was unsecured. Eich also alleged that he should receive the Layton Hardware Store business, including the inventory of merchandise, the equipment and goodwill, and the building in which the business is located, from the estate of the deceased; or in the alternative he should receive the sum of $54,000, "for which claim is made hereunder." The record further reveals that on the following day, October 17, 1978, Eich filed an amended statement of claim, repeating generally the allegations contained in his original statement of claim, but adding the following statement: "THAT THE ABOVE CLAIM IS SUBMITTED WITHOUT PREJUDICE TO CLAIMANT'S RIGHT TO PURSUE ANY OTHER REMEDY ON SAID DECEDENT'S ORAL PROMISE TO DEVISE AND BEQUEATH THE LAYTON HARDWARE STORE BUSINESS AND THE BUSINESS BUILDING AS DESCRIBED ABOVE TO CLAIMANT."

Thereafter, on October 24, 1978, the aforesaid personal representatives of the estate disallowed the claim filed by the plaintiff, as amended; and thereafter,

on November 14, 1978, Eich filed his petition in the county court of Sarpy County for allowance of his claim. Following a hearing on the matter on December 19, 1978, the county court, on January 26, 1979, entered its order allowing the claim filed by Eich on October 16, 1978, and the amended claim filed on October 17, 1978, finding that the decedent, Harry H. Layton, did make an enforceable unilateral contract to transfer to the claimant, James C. Eich, the decedent's hardware store, including the land, building, equipment, and inventory. The court also found and ordered that Eich should be awarded the value of the inventory of the hardware store in the sum of $15,381.37, as shown in the inventory, which amount should be awarded to Eich in cash. The court also found and ordered that Eich should be awarded the land, building, and equipment used in the operation of the hardware store, and also the trade name "Layton Hardware Store," all subject to taxes and other liabilities. Finally, the court ordered: "That Lester J. Lutz and Ward A. Thompson, the Personal Representatives of said estate, are hereby ordered and directed to pay to James C. Eich the Claimant herein, the amount awarded to him as set forth above and that they are further directed to execute the necessary deeds, transfers and conveyances to vest title in James C. Eich to the land, building, and equipment and the trade name of 'Layton Hardware Store' . . . ."

On January 25, 1979, the personal representatives appealed the foregoing order of the county court to the District Court for Sarpy County and on March 13, 1979, filed their petition praying for an order disallowing Eich's claims. Eich filed an answer and cross-petition asking that the order of the county court allowing the claim, dated January 26, 1979, be affirmed, and the appeal by the personal representatives be dismissed. The parties stipulated that the transcript of the testimony presented during the trial was to have the same force and effect as a deposition of the wit-

nesses who had appeared before the county court.

The record next reveals that on May 4, 1979, the personal representatives filed a motion for summary judgment on Eich's claim, alleging that there was no question of material fact and that the estate of Harry H. Layton was entitled to a judgment in its favor as a matter of law. Hearing was held on the motion for summary judgment on May 23, 1979, and it was taken under advisement by the trial judge. The court entered its opinion and order on October 30, 1979, but did not specifically rule on the motion for summary judgment, and dismissed the action on the ground that the county court was without jurisdiction to hear the matter. In its opinion and order, the court stated:

"The claimant herein is one James C. Eich. The substance of the claim filed before the county court was that the decedent had made oral promises to leave a hardware store, furnishings, and inventory to the claimant in return for the claimant's continued employment. In plain language, the action is one founded on an oral promise to make a will. The claimant prayed for alternative relief in the form of money damages, but either form of relief would be founded on an oral contract to make a will, if one existed.

"The Sarpy County Court, Judge Walsh, heard the evidence, concluded the contract existed, gave the claimant a money judgment for the value of the inventory, and directed the personal representatives to convey title to the store and furnishings to the claimant. *In short, the County Court decreed specific performance save for the value of the inventory.* The estate prosecuted this appeal.

"The motion for summary judgment was initially presented as if the issues were properly before the Court. They are not. An action for specific performance may be litigated only in the court possessing equity jurisdiction — the district court. The county court has no authority or jurisdiction to try such actions,

even if they are denominated as a 'claim' against an estate. The order of the county court allowing the 'claim' of James Eich is a nullity, and the matter should be remanded to the County Court of Sarpy County with directions to dismiss the matter for lack of jurisdiction." (Emphasis supplied.)

The issue in this case is whether the county court had jurisdiction to hear plaintiff's claim, allegedly based on a promise of the decedent "to execute a will" in his favor.

In our disposition of this matter, we first examine the applicable constitutional and statutory provisions with reference to the jurisdiction of county courts in probate matters. We note at the outset that prior to 1970, Neb. Const. art. V, § 16, set out the jurisdiction of county courts, and provided in part as follows: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and in such proceedings to find and determine heirship; appointment of guardians, and settlement of their accounts; and such other jurisdiction as may be given by general law: But they shall not have jurisdiction . . . in civil actions in which title to real estate is sought or drawn in question; nor in actions on mortgages or contracts for the conveyance of real estate . . . ." However, that provision of the Constitution, and several others, including the abolishment of justice of the peace courts, was repealed in 1970; and that at all times material to this case, there was no constitutional provision in effect with reference to jurisdiction of county courts. Since 1970, the jurisdiction of such courts has been set forth in the statutes of this state, specifically Neb. Rev. Stat. § 30-2211 (Reissue 1979) and Neb. Rev. Stat. § 24-517 (Reissue 1979).

Section 24-517 now provides in pertinent part: "Each county court shall have the following jurisdiction: (1) Exclusive original jurisdiction of all matters relating to decedents' estates, including the probate of

wills and the construction thereof . . . (9) All other jurisdiction heretofore provided and not specifically repealed by Laws 1972, Legislative Bill 1032, and such other jurisdiction as hereafter provided by law."

Section 30-2211 (above referred to), the Nebraska Probate Code, sets forth the jurisdiction of county courts as follows: "(a) To the full extent permitted by the Constitution of Nebraska, the court has jurisdiction over all subject matter relating to (1) estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons; (2) protection of minors and incapacitated persons; and (3) trusts. (b) The court has full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it." The comment to § 30-2211 specifically states that this section corresponds to § 24-517 and includes the statement: "'In carrying out this statutory authorization, it is to be remembered that county courts are without equity jurisdiction, *but in exercising original jurisdiction over estates, may apply equitable principles to matters within probate jurisdiction.'"* (Emphasis supplied.)

We are of the opinion that the disposition of this case is governed by our recent opinion involving the same statutory provisions in *Kentopp v. Kentopp*, 206 Neb. 776, 295 N.W.2d 275 (1980), where we held that the county court had the power to partition real estate which was a part of the estate of a decedent whose estate proceedings were pending in Richardson County, at least until the termination of the proceedings, notwithstanding the fact that under the Constitution of this state district courts have original powers in both law and equity, including the right to partition real estate. In rejecting the proposition that the partition action must be treated as an equity case, separate and distinct from matters relating to a decedent's estate or settlement, the court in *Kentopp* at 786-87, 295 N.W.2d at 280-81, stated:

"The partition and sale of real estate of a decedent is clearly a matter relating to a decedent's estate and jurisdiction to partition and sell real estate of a decedent is required by the county court at the time jurisdiction is acquired for all other 'matters relating to decedents' estates.'

. . . .

"We hold that, upon the filing of a decedent's estate proceeding, the county court acquires jurisdiction of all matters relating to the decedent's estate, including jurisdiction to partition and sell the decedent's real estate. During the pendency of the decedent's estate proceedings in the county court, and until the estate has been placed in possession of those to whom it devolves or until the jurisdiction of the county court is otherwise terminated, the District Court shall not exercise its original jurisdiction in partition actions as to real estate owned solely by the decedent."

In deciding *Kentopp*, this court quoted and relied upon Neb. Rev. Stat. § 30-2476 (Reissue 1979), particularly subsections (6) and (23) of that section. We also rely upon that section, particularly subsection (3) thereof. That section and subsection (3) provide as follows: "Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to the priorities stated in section 30-24,100, a personal representative, acting reasonably for the benefit of the interested persons, may properly: . . . (3) Perform, compromise or refuse performance of the decedent's contracts that continue as obligations of the estate, as he may determine under the circumstances. In performing enforceable contracts by the decedent to convey or lease land, the personal representative, among other possible courses of action, may: (i) execute and deliver a deed of conveyance for cash payment of all sums remaining due or the purchaser's note for the sum remaining due secured by a mortgage or deed of trust on the land; or (ii) deliver a deed in escrow with directions that

the proceeds, when paid in accordance with the escrow agreement, be paid to the successors of the decedent, as designated in the escrow agreement . . . ." It appears clear that by virtue of the above statute, the county court had jurisdiction with reference to the claim filed by Eich against the estate, based upon an alleged breach of contract by the decedent, and to rule upon and dispose of said matter as a claim against the estate. Likewise, the county court, in its order allowing the claim and providing for a cash payment, as well as distribution in kind, to the claimant, had jurisdiction to do so, as did also the District Court on appeal.

The facts, as revealed in the record of this case, indicate that the parties complied with the applicable statutory provisions with reference to the presentation and disposition of claims against the decedent's estate; and we determine that upon the filing of the intestacy proceeding in this case, the county court acquired jurisdiction under the Nebraska statutes above set out to hear all matters relating to the decedent's estate, including jurisdiction to make a determination as to the claim filed by Eich in this matter. We conclude that the District Court erred in finding that the county court of Sarpy County had no jurisdiction in the matter, and we therefore reverse its order and remand the cause for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., concurs in result.