IN RE ADOPTION OF TRYSTYN D.
VICKI C., APPELLANT, V. DAVID PRESTIDGE
AND RONDA PRESTIDGE, APPELLEES.
611 N.W.2d 112

Filed May 26, 2000.    No. S-98-1177.

Stacy C. Nossaman-Petitt, of Nossaman Petitt Law Firm, P.C., for appellant.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Vicki C., the natural mother of Trystyn D., filed a motion in the county court for Scotts Bluff County to set aside the adoption of Trystyn by David Prestidge and Ronda Prestidge. The court found that it lacked jurisdiction to consider the motion and, in the alternative, that Neb. Rev. Stat. § 43-116 (Reissue 1993) statutorily barred reopening of the decree in the absence of "clearly proven fraud." Thus, the court sustained the Prestidges' demurrer and dismissed the matter. On appeal, the Nebraska Court of Appeals concluded that the demurrer was properly sustained for failure to state a cause of action but that the county court erred in dismissing the matter rather than granting Vicki leave to amend. See *In re Adoption of Trystyn D.*, 8 Neb. App. 704, 600 N.W.2d 508 (1999). The Prestidges petitioned this court for further review.

## SCOPE OF REVIEW

When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination

made by the court below. *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 605 N.W.2d 136 (2000).

## FACTS

In May 1992, the Prestidges petitioned the county court for Scotts Bluff County to adopt Trystyn. The petition alleged that Trystyn was born on October 27, 1991, and had been in their care and custody since October 29. The Prestidges also filed copies of relinquishments and consents to adoption signed by the natural parents, Vicki and Robert D.

Subsequently, the Prestidges obtained an order authorizing notice of the adoption by publication. In addition, notice of the adoption was sent to Vicki at her last known address in Layton, Utah. A second notice was sent to Vicki in Clearfield, Utah. The county court entered a decree of adoption on June 18, 1992.

On April 13, 1998, Vicki filed a motion in the county court for Scotts Bluff County seeking to set aside the adoption. Vicki alleged that she is Trystyn's biological mother and that she was forced into signing over guardianship of Trystyn to the Prestidges, who were related to Robert. She further alleged that a petition for appointment of guardian and consent to the appointment of guardian had been filed in Scotts Bluff County on October 31, 1991, and that on November 19, she signed and filed a revocation of consent to the guardianship.

Specifically, Vicki's motion asserted: (1) She was fraudulently coerced into signing the guardianship papers and any adoption papers bearing her signature; (2) upon realizing the coercive nature of Robert's family, she revoked her consent to the guardianship; (3) during the pendency of the guardianship and adoption proceedings, she and Robert vacationed in Florida, and Robert subsequently moved her to Utah, thereby keeping her uninformed as to the proceedings surrounding Trystyn; (4) sometime during the calendar year 1992, adoption proceedings took place, and at no time was she informed of these proceedings; (5) at all relevant times during the proceedings, the Prestidges were aware of her address and failed to properly notify her of the adoption proceedings; and (6) due to the fraud and coercion of Robert and the Prestidges, Vicki did not become aware of the adoption until June 5, 1997, and therefore, any statute of limitations should be tolled until that time.

The Prestidges' demurrer to the motion to set aside the adoption alleged that the county court lacked jurisdiction over the Prestidges, Trystyn, and the subject matter of this action.

Relying on Neb. Rev. Stat. § 43-1203 (Reissue 1998), the jurisdictional component of the Nebraska Child Custody Jurisdiction Act (NCCJA), Neb. Rev. Stat. § 43-1201 et seq. (Reissue 1998), the county court determined that it lacked jurisdiction to consider the motion to set aside the adoption. The court found that Trystyn and the Prestidges had not been residents of the State of Nebraska for many years and that their current state of residence had acquired a substantial interest in determining the outcome of the dispute. Thus, the court concluded that it would be error to render a judgment and have no practical way to enforce it.

In the alternative, the county court determined that even if it were to assume jurisdiction, § 43-116 statutorily barred reopening this decree and would not allow the court to set aside the adoption unless there was clearly proven fraud. Finding that there was no evidence or proof of fraud, the court dismissed Vicki's motion to set aside the adoption.

On appeal, the Court of Appeals concluded that the county court had erroneously sustained the Prestidges' demurrer on jurisdictional grounds, but the Court of Appeals refused to consider the application of § 43-1203. *In re Adoption of Trystyn D.*, 8 Neb. App. 704, 600 N.W.2d 508 (1999). The Court of Appeals also concluded that the demurrer was properly sustained for failure to state a cause of action because Vicki's motion defectively alleged equitable estoppel but that the county court erred in dismissing the matter rather than granting Vicki leave to amend. Thus, the Court of Appeals reversed the judgment of the county court and remanded the cause for further proceedings. We granted further review.

## ASSIGNMENTS OF ERROR

In their petition for further review, the Prestidges assert that the Court of Appeals erred (1) in concluding that it should not decide whether the NCCJA bars this proceeding, (2) in concluding that the 2-year statute of limitations set forth in § 43-116 could be tolled by a claim of fraud, and (3) in concluding that

equitable estoppel was a defense to § 43-116 when the issue was not argued or pled by Vicki.

## ANALYSIS

■ Initially, we address what evidence can be considered on appeal. When cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in the former proceedings involving one of the parties now before it, the court has a right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. Matters so judicially noticed are properly considered when determining the questions presented by a demurrer. *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94 (1994); *Rhodes v. Yates*, 210 Neb. 14, 312 N.W.2d 680 (1981); *Knapp v. City of Omaha*, 175 Neb. 576, 122 N.W.2d 513 (1963). In considering the demurrer to Vicki's motion to set aside the adoption, the county court could take judicial notice of the facts which were determined in the adoption, since it had a right to examine its own records and take judicial notice of its own proceedings and judgments. The motion to set aside the adoption and the adoption decree are in the same county court case. Thus, we consider the decree of adoption as a part of the appellate record.

Next, we consider whether the county court erred in concluding that it did not have jurisdiction to consider the motion to set aside the adoption pursuant to § 43-1203. The summons contained in the record shows that the Prestidges were served in Decatur, Texas. We conclude that despite the fact that the Prestidges were served in Texas, the court possessed subject matter jurisdiction to consider the motion.

■ Subject matter jurisdiction is a court's power to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject involved in the action before the court and the particular question which it assumes to determine. *Schweitzer v. American Nat. Red Cross*, 256 Neb. 350, 591 N.W.2d 524 (1999). Neb. Rev. Stat. § 43-102 (Reissue 1998) provides that the county court in the county where the person or persons desiring to adopt a child reside has jurisdiction of an adoption proceeding.

At the time of the adoption, the Prestidges resided in Scotts Bluff County, and the county court properly assumed jurisdiction over the adoption. As previously noted, the motion to set aside the adoption was filed in Scotts Bluff County Court in the same case as the adoption.

In determining that it lacked jurisdiction, the county court relied upon the jurisdictional guidelines set forth in the NCCJA. Other courts have concluded that the Uniform Child Custody Jurisdiction Act (UCCJA) is applicable to adoption proceedings. See, e.g., *J.D.S. v. Franks*, 182 Ariz. 81, 893 P.2d 732 (1995) (father sought to set aside adoption, and court relied upon UCCJA to determine whether to exercise jurisdiction); *In re Marriage of Dickson*, 983 P.2d 44 (Colo. App. 1998) (action to dissolve marriage and set aside adoption where court relied upon UCCJA). Section 43-1201 provides that the general purpose of the NCCJA is to avoid jurisdictional competition and conflict with courts of other states in matters of child custody and to ensure that litigation concerning custody of a child takes place ordinarily in the state with which the child and his or her family have the closest connection. The NCCJA establishes a strong jurisdictional preference for the state which originally determined custody to exercise continuing jurisdiction. See *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996).

The adoption decree at issue was entered in Scotts Bluff County, Nebraska. At the time of the adoption, the Prestidges resided in Scotts Bluff County. The adoption consent forms were signed there, and the adoption decree was entered there. These facts illustrate the county court's interest in the adoption and any motion to set it aside. Moreover, although Texas might qualify as Trystyn's home state pursuant to the NCCJA, there has been no attempt by a Texas court to exercise jurisdiction. Thus, the county court erred when it determined that it did not have jurisdiction to hear the motion to set aside the adoption, for the county court has continuing jurisdiction over this matter.

We next consider whether Vicki's claim was barred by § 43-116. The county court concluded that even if it were to assume jurisdiction, Vicki's motion was barred by § 43-116. At that time, § 43-116 provided:

When any county court in the State of Nebraska shall . . . hereafter enter of record such a decree of adoption, it shall in like manner be conclusively presumed that said adoption and all instruments and proceedings in connection therewith are valid in all respects notwithstanding some defect or defects may appear on the face of the record, or the absence of any record of such court, unless an action is brought within two years from the entry of such decree of adoption attacking its validity.

The county court determined that § 43-116 statutorily barred reopening and setting aside the adoption decree absent clearly proven fraud.

Relying on our decision in *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994), the Court of Appeals stated that principles of equitable estoppel were available to Vicki and that after the demurrer was sustained, the county court erred by not granting leave to amend. *In re Adoption of Trystyn D.*, 8 Neb. App. 704, 600 N.W.2d 508 (1999). *Schendt* was a personal injury action against a medical doctor which alleged negligence and fraudulent concealment. The doctor demurred, alleging that the claim was barred by the statute of limitations. The issue presented concerned a statute of repose which provides that in no event can an action be commenced more than 10 years after the date of rendering or failing to render the professional service which provided the basis for the cause of action. We held that a claim of fraudulent concealment of facts may furnish a basis for the application of the doctrine of equitable estoppel to bar a defendant's use of a statute of repose.

In applying *Schendt*, the Court of Appeals concluded that if Vicki could amend her motion to establish that the Prestidges fraudulently concealed a material fact preventing her from bringing the action within the confines of § 43-116 and that she brought the action within a reasonable time after discovery of the fraud or concealment, then it was possible to assert grounds to vacate the adoption, notwithstanding the 2-year limit of § 43-116. On these grounds, the Court of Appeals reasoned that Vicki should be given leave to amend. *In re Adoption of Trystyn D., supra.*

*Schendt* is distinguishable from the present case. Neb. Rev. Stat. § 25-222 (Reissue 1995), which limits the commencement

of an action to 10 years from the date of rendering or failing to render a professional service, is a statute of repose. Its purpose is to prevent stale claims. In contrast, § 43-116 creates a conclusive presumption that adoptions are valid 2 years after the entry of a decree of adoption so as to establish a stable environment for adopted children. This is not to say that equitable principles cannot be applied to avoid § 43-116, but, certainly, the goal of maintaining a stable environment for adopted children requires that equitable principles be applied under very limited circumstances. Every case must be evaluated upon the facts presented.

We conclude as a matter of law that equitable principles, such as estoppel, do not apply to the case at bar. In her motion to set aside the adoption, Vicki alleged that she was forced into signing over guardianship of Trystyn to the Prestidges and that she was never informed that an adoption would occur. She also asserted that she was fraudulently coerced into signing guardianship and adoption papers and that upon realizing the coercive nature of Robert's family on November 19, 1991, she revoked her consent to the guardianship. Sometime during 1992, Trystyn was adopted, but Vicki claims that due to the fraud and coercion of Robert and the Prestidges, she did not become aware of the adoption until June 5, 1997. Thus, she argues that the 2-year period for attacking the decree of adoption did not begin to run until that time.

The use of § 43-116 to bar a challenge to a decree of adoption was addressed in *Syrovatka v. Erlich*, 608 F.2d 307 (8th Cir. 1979). There, the county court found that the children were neglected and in need of supervision and committed the children to the custody of the Department of Public Welfare. On October 2, 1968, the children were adopted without the parents' consent, and the parents were notified of the adoption by a letter dated December 30. On March 6, 1972, the parents filed a state habeas corpus action seeking custody of the children, which was dismissed. We affirmed the dismissal of the petition. See *Syrovatka ex rel. Syrovatka v. Graham*, 190 Neb. 355, 208 N.W.2d 281 (1973).

The parents then filed a petition for habeas corpus to gain custody of the children in the U.S. District Court. The district

court dismissed the petition, and the parents appealed. The parents alleged that the termination of their parental rights was invalid because they received inadequate notice of the hearing, in violation of their 14th Amendment due process rights. They claimed the resulting adoption was invalid because it lacked their consent as the natural parents. On appeal, the Eighth Circuit held that although there was evidence that the notice of termination did not adhere to due process standards, such dismissal would not be altered because the opportunity to challenge the adoption proceedings by collateral attack was no longer available to the parents. The court pointed out that § 43-116 requires that a challenge to an adoption must be brought within 2 years of the date of the adoption. The parents brought their action more than 3 years after the adoption, and the conclusive presumption of validity contained in § 43-116 operated to bar the subsequent challenge. The court concluded that the State of Nebraska has a legitimate and important interest in establishing a stable environment for adopted children and that § 43-116 has a reasonable relation to this legitimate state purpose. *Syrovatka v. Erlich, supra.*

A similar statute was considered in *Hogue v. Olympic Bank,* 76 Or. App. 17, 708 P.2d 605 (1985). There, the natural mother brought an action to vacate a decree of adoption, and the trial court vacated the decree on the ground that it was void. In reversing the decision, the Oregon Court of Appeals held that the statute finalizing the decree, although containing a jurisdictional defect, did not violate due process rights, since the statute provided a reasonable limitation period in which to attack the adoption. The appellate court concluded that the natural mother was barred from challenging the decree even though she had not consented to or been given notice of the adoption because she had learned of the adoption at an earlier date and had taken no action. The appellate court determined that although the decree was void when it was entered because the trial court lacked jurisdiction to enter it without consent from or notice to the natural mother, the decree was conclusively presumed to be valid and immune from attack 1 year after it was entered.

In reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together

with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept the conclusions of the pleader. *Prokop v. Hoch*, 258 Neb. 1009, 607 N.W.2d 535 (2000). Vicki has pled that she was fraudulently coerced into signing the guardianship and adoption papers. She has also alleged that upon realizing the coercive nature of Robert's family, she revoked her consent to the guardianship on November 19, 1991. Her pleading states that the attorney representing her filed a motion to withdraw on December 12, 1991, which stated: " 'We have been advised that [Vicki] left [the State of Nebraska] with Robert . . . and returned to the State of Florida . . . and [she] has not advised us of her whereabouts or her wishes with respect to this matter.' "

Although Vicki successfully argued in the Court of Appeals that she did not become aware of the adoption until June 5, 1997, and therefore any statute of limitations should be tolled until that time, we conclude as a matter of law that Vicki is not entitled to equitable relief. It can reasonably be inferred that Vicki was aware of the alleged coercive nature of Robert and the Prestidges when she left Nebraska and went to Florida in 1991, but did nothing with regard to the adoption. Vicki cannot now be permitted to collaterally attack the adoption proceedings which took place in 1992 on the basis that she did not learn of the adoption until June 5, 1997. She had knowledge that her consent to the adoption had not been revoked when she left for Florida. Her failure to make any inquiry concerning the status of the adoption and her failure to take any action for 7 years after her departure from Nebraska bars the application of equitable estoppel as a matter of law. Vicki had 2 years from the entry of the adoption decree in which to bring an action. See § 43-116.

CONCLUSION

Under the facts of this case, we conclude that the Court of Appeals erred in determining that the county court should have allowed Vicki to amend her petition to allege equitable estoppel. For the reasons set forth herein, we reverse the decision of the Court of Appeals and remand the cause with directions to affirm the dismissal entered by the county court for Scotts Bluff County.

REVERSED AND REMANDED WITH DIRECTIONS.